IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **FREDERICA DAVIS** | * | |
| | * | |
| v. | * | Civil Case No. JKB-14-2115 |
| | * | |
| **COMMISSIONER, SOCIAL SECURITY** | * | |
| | * | |

*************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014–01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions for summary judgment. [ECF Nos. 14, 15]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). For the reasons set forth below, I recommend that the Commissioner's motion be granted and that the Commissioner's judgment be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Ms. Davis protectively filed an application for Supplemental Security Income ("SSI") on November 13, 2009. (Tr. 171-77). Her application was denied initially and on reconsideration. (Tr. 53-55, 59-60). An Administrative Law Judge ("ALJ") held a hearing on March 4, 2013, at which Ms. Davis was represented by counsel. (Tr. 30-50). Following the hearing, the ALJ determined that Ms. Davis was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 10-29). The Appeals Council denied Ms. Davis's request for review, (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Ms. Davis suffered from the severe impairments of hypertension, cerebrovascular accident, IQ value of 61, and asthma. (Tr. 15). Despite these impairments, the ALJ determined that Ms. Davis retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.967(b) except she is precluded from climbing ladders, ropes or scaffolds, and is limited to no more than frequent climbing ramps and stairs, crawling, crouching, kneeling, stooping, or balancing. The claimant is limited to no more than concentrated exposure to irritants such as fumes, odors, dust, gases, or poorly ventilated areas. She is limited to work that is simple as defined in the Dictionary of Occupational Titles as specific vocational preparation levels one and two, and are routine and repetitive tasks. Such tasks are in a work environment that is free of fast paced production requirements which is defined as constant activity with work tasks performed sequentially in rapid succession involving only simple work related decisions with few if any work place changes. She is limited to no more than occasional interaction with the general public, co-workers, and supervisors.

(Tr. 19). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Davis could perform jobs existing in significant numbers in the national economy and that, therefore, she was not disabled. (Tr. 23).

Ms. Davis disagrees. She raises two primary arguments on appeal: (1) that the ALJ erred at step two of the sequential evaluation by failing to determine that several of her impairments were severe; and (2) that the ALJ erred in assessing the functional limitations caused by her mental impairments. Each argument lacks merit.

Ms. Davis contends that, at step two of the sequential evaluation, the ALJ erred by failing to classify her dementia, hemiplegia, and major depressive disorder as severe impairments. Step two is a threshold determination of whether a claimant is suffering from a severe impairment or combination of impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 147-48 (1987) (upholding the severity threshold because, "if a claimant is unable to show that he has a medically severe impairment . . . there is no reason for the Secretary to consider the claimant's age, education, and work experience"). If a claimant is not suffering from any severe impairment(s), she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). If a claimant is found to be suffering from a severe

impairment(s), the analysis simply proceeds to the next step. *Id.* In this case, as noted above, the ALJ concluded that several of Ms. Davis's impairments were severe. The ALJ then continued with the sequential evaluation and considered all of Ms. Davis's impairments, both severe and non-severe, that significantly impacted her ability to work. *See* 20 C.F.R. § 416.945(a)(2).

Ms. Davis correctly notes that the ALJ's opinion does not include a discussion of whether her memory problems independently constituted a severe impairment. However, as noted above, the ALJ determined that several other of Ms. Davis's impairments were severe, and that the step two severity threshold was thus satisfied. Thereafter, in assessing Ms. Davis's RFC, the ALJ discussed Ms. Davis's memory problems and the limitations resulting therefrom. (Tr. 21) ("She did claim she had worsening memory . . . [S]he was noted with impaired memory. This would impair her ability to perform complex tasks on a consistent basis. Accordingly, the claimant is limited to work that is simple as defined in the Dictionary of Occupational Titles as specific vocational preparation levels one and two, and are routine and repetitive tasks. Such tasks are in a work environment that is free of fast paced production requirements which is defined as constant activity with work tasks performed sequentially in rapid succession involving only simple work related decisions with few if any work place changes."). Because, in assessing Ms. Davis's RFC, the ALJ accounted for the functional limitations caused by her impaired memory, any error in failing to classify her memory impairment as severe was harmless.

Ms. Davis also takes issue with the ALJ's failure to find that her hemiplegia was a severe impairment. First, I note that the ALJ characterized Ms. Davis's stroke, the likely cause of any hemiplegia from which she suffers, as a severe impairment. Moreover, in assessing her RFC, the ALJ discussed Ms. Davis's left side weakness. As a result thereof, he found that she was precluded from several postural activities completely, and limited to performing other activities no more than frequently. Thus, since the ALJ's RFC assessment included an evaluation of the

functional limitations caused by Ms. Davis's left side weakness, any error in the ALJ's failure to discuss, at step two, whether her left side weakness constituted an independent impairment was likewise harmless.

The ALJ also discussed the functional limitations resulting from Ms. Davis's major depressive disorder, despite his failure to assess whether Ms. Davis's depression constituted a severe impairment. Indeed, the ALJ seems to have credited Ms. Davis's testimony that her depression causes difficulties in interacting with large crowds of people (Tr. 44-45), as the ALJ limited Ms. Davis to "no more than occasional interaction with the general public, co-workers, and supervisors," (Tr. 19). Similarly, the only symptoms of Ms. Davis's depression that her physicians noted were agitation, irritability, and difficulties with changes in the workplace, which corresponds with the limitation to "few if any workplace changes" in the ALJ's RFC assessment. *Compare* (Tr. 454), *with* (Tr. 19). Since the ALJ credited Ms. Davis's statements and her physician's opinions concerning the limitations caused by her depression, it is unclear what prejudice Ms. Davis contends she has suffered as a result of the fact that the ALJ did not classify her major depressive disorder as a severe impairment. Any error in the ALJ's failure was thus harmless.

Ms. Davis also argues that the ALJ erred in assessing her mental RFC. Ms. Davis argues that the ALJ did not cite an acceptable medical source in support of the limitations included in his RFC assessment, apparently taking particular issue with the ALJ's evaluation of the opinion of Dr. Bailey, her treating psychiatrist. Pl. Mem. 16-17. At step three of the sequential evaluation, the ALJ discussed Dr. Bailey's opinions regarding Ms. Davis's restriction in activities of daily living, social functioning, and maintaining concentration, persistence, and pace. (Tr. 16-17). The ALJ explained that Dr. Bailey's opinions were "of little probative weight" because they were inconsistent with Dr. Bailey's own treatment records as well as other

4

medical records. *Id.* In determining that marked restrictions in those areas were not warranted, the ALJ cited statements from Dr. Bailey's treatment notes documenting appropriate dress, good attention to hygiene, cooperative behavior, and attention and concentration within normal limits. *Id.* The ALJ instead found that moderate difficulties were warranted in social functioning and concentration, persistence, and pace, citing statements from Dr. Bailey's treatment notes indicating that Ms. Davis was easily agitated and had impaired memory. *Id.* Although the ALJ did not reiterate his assignment of weight to Dr. Bailey's opinions in assessing Ms. Davis's RFC, the ALJ's step three evaluation makes clear the extent to which Dr. Bailey's opinions were rejected, as well as the extent to which they were credited. The ALJ's RFC assessment includes limitations that correspond with the ALJ's determination that, taking into account Dr. Bailey's treatment notes, Ms. Davis suffered from moderate difficulties in social functioning and concentration, persistence, and pace. Accordingly, I find that the ALJ provided substantial evidence in support of his evaluation of Dr. Bailey's opinion and in support of the limitations included in his RFC assessment.

Next, Ms. Davis claims that the ALJ failed to assess her ability to "understand, carry-out [sic] and remember instructions," and her ability to "respond appropriately to supervision and co-workers." Pl. Mem. 16. This claim is without merit. The ALJ's opinion contains a detailed discussion of how Ms. Davis's mental impairments have impacted her capabilities in both areas, and his RFC assessment includes corresponding limitations that account for her difficulties. (Tr. 21) (discussing Ms. Davis's average knowledge and intelligence, noting her impaired memory, and determining that she would be limited to simple work, routine and repetitive tasks in an environment free of fast paced production requirements with simple work related decisions and few if any workplace changes); (Tr. 21-22) (discussing Ms. Davis's impairment in social functioning and limiting her to "no more than occasional interaction with the general public, co-

workers, and supervisors"). Although the ALJ did not employ the specific phrases that the Social Security rulings use to describe work-related mental activities, it is nevertheless apparent from the ALJ's opinion that the relevant activities were evaluated. *See* SSR 96-8P, 1996 WL 374184, at * 6 (July 2, 1996). Accordingly, I find that the ALJ cited substantial evidence in support of his evaluation of Ms. Davis's ability to perform work-related mental activities.

Finally, Ms. Davis contends that the ALJ's limitation to only occasional contact with the general public, co-workers, and supervisors is inconsistent with the ability to perform work on a sustained basis, and that the ALJ's findings of fact are thus incomplete. Pl. Mem. 18. Ms. Davis's argument, however, ignores the fact that the ALJ's ultimate determination rested upon the VE's testimony that, even subject to the limitations included in the ALJ's RFC assessment, there exist a significant number of jobs in the national economy that Ms. Davis is capable of performing. Ms. Davis has not identified any deficiencies in the VE's testimony, and I find that the ALJ's reliance thereupon was supported by substantial evidence.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment [ECF No. 15];

2. the Court DENY Ms. Davis's Motion for Summary Judgment [ECF No. 14];

3. the Court AFFIRM the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g); and

5. the Court close this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.


Dated:  May 28, 2015                                      /s/
                                                                     Stephanie A. Gallagher
                                                                     United States Magistrate Judge